UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRENCE F SMITH,

                    Petitioner,

       v.

JEFFREY A UTTECHT,

                    Respondent.

CASE NO. 3:18-CV-05733-RBL-DWC

REPORT AND RECOMMENDATION

Noting date: February 15, 2019

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from a state court conviction. Dkt. 4. The Court concludes the state court's adjudication of the grounds raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied.

## BACKGROUND

### I.    Factual Background

The Washington Court of Appeals summarized the facts of Petitioner's case as follows:

On August 5, 2014, an African-American male entered a bank wearing a bandana over his face and a red and black flannel shirt. He pointed a handgun at two bank employees; demanded money from them; and, after they gave him the money, left the bank in a car driven by Smith's identical twin brother Terrell Smith.

A woman working next door to the bank had seen an African-American man wearing a "button-up shirt and . . . a bandana on his head" run past her store. She then saw the same man run by her window again and "get into an older blue car." The woman contacted the bank and found out about the robbery.

About four minutes after the robbery, a deputy located a vehicle matching the robbery vehicle's description. When the deputy activated his lights, the blue car sped away. Another deputy pursued the car and successfully stopped it by running the car into a ditch. Terrell Smith was driving the car. Terrell's brother, Smith, was the passenger. Both men were African-American. Smith was wearing "a white tank-top and baggy grey sweat pants." Smith and Terrell both unsuccessfully attempted to flee on foot.

Inside the car, the deputies found a large silver handgun on the floor below the steering wheel. The deputies also found "a red, white and blue or black colored plaid shirt" on the passenger side and currency on the floor next to the passenger's seat.

When deputies brought the robbery victims to the scene, one of them identified Smith as the robber, stating that Smith's grey sweatpants, build, and size matched those of the robber. According to the probable cause statement, a surveillance video showed that the robber was wearing athletic shoes with dark tops and light soles that were similar to those Smith was wearing and that he was wearing "pants consistent with grey sweatpants," which was consistent with what one of the victims described.[1] . . .

The State . . . charged Smith with . . . one count of first degree robbery of a financial institution, charging Smith as a principle or an accomplice, without a firearm sentencing enhancement, to facilitate a plea. . . .

Smith initially agreed to allow the superior court to rely on the probable cause statement and/or the police reports to find a factual basis for the plea rather than to make a statement.

At the November 18, 2014 change of plea hearing, the superior court reviewed the evidence[2] and commented,

---

[1] This video is not part of the appellate record. (Footnote in original.)

[2] Although the superior court stated it was reviewing the statement of probable cause and did not mention any police reports or other evidence, some of its statements during the plea colloquy suggest that it was looking at other evidence. For instance, the superior court refers to a witness stating that the robber was wearing jeans, but that

> I'm having trouble finding how this supports a plea of guilty to Robbery in the First Degree. I understand all the circumstantial evidence, I get the car, I get the weapon, I get the cash. Is it your position that this is enough to satisfy the providency [sic] of a plea? There is nothing here to say he's the guy that was either behind the wheel or was the guy that had the gun.

The State responded that (1) Smith's clothing matched the robber's clothing and, because the deputies started their pursuit almost immediately after the robbery, the two men did not have time to change clothes and (2) one of the bank tellers identified Smith as the robber based on his clothing immediately after the officers stopped the getaway car.

The superior court expressed concern that a witness from "next door in the strip mall" stated that the robber ran past the businesses in a button up shirt and jeans and that he was wearing a bandana on his head. Concerned about what the witness saw outside the bank, the superior court stated it could not find a factual basis for the plea based on the descriptions of the robber's clothing.

The superior court recessed to allow defense counsel to talk to Smith. When Smith returned, he agreed to provide a written statement to establish the factual basis for the plea. Defense counsel commented that when she and Smith spoke, she "made sure Mr. Smith understood what the court was saying in terms of the court's concerns by just accepting the probable cause statement" and that Smith understood the court's "concerns."

Smith wrote the following statement: "On August 5, 2014, in Tacoma, Pierce County Washington, I went into the financial institution and took money that was not mine by force or fear of injury." The superior court confirmed with Smith that he had written this statement and that it was an accurate description of the offense. Smith also agreed that he was entering the plea because he believed he was "guilty of the offense," first degree robbery. The superior court accepted the guilty plea . . . .

At the start of the sentencing hearing before another judge, defense counsel notified the Court that Smith wanted to withdraw his guilty plea . . . .

Smith argued . . . that he had not received or reviewed defense counsel's and his investigator's notes of the witnesses' interviews and that he "did not review all of the discovery in the case" before entering his plea. He asserted that, apparently in light of the materials he later reviewed with defense counsel and his investigator,

---

fact is not in the probable cause statement. There are, however, no police reports, photographs, witness statements, or any other documents related to the facts of the offense other than the statement of probable cause in the appellate record. (Footnote in original).

1   taking the State's offer was not in his best interest and that he was misadvised by
    defense counsel. . . .
2

3   Ten days later, Smith filed a handwritten letter regarding his attempt to withdraw
    his guilty plea. He asserted that he wished to withdraw his plea due to ineffective
    assistance of counsel based on defense counsel's failure (1) to investigate or keep
4   him informed and properly advised during plea negotiations, (2) to allow him to
    review the evidence, and (3) to file unspecified motions. Smith specifically stated
5   that he was concerned about the evidence relating to the identity of the robber
    because there were several descriptions of the robber,[3] and defense counsel had not
6   interviewed all of the witnesses.

7   On March 26, Smith filed another letter with the superior court. In this letter, Smith
    asserted he had only recently been able to review the "evidence in [his] case"
8   and had concluded that the police made "mistake[s]" in this case, that his original
    defense counsel had failed to address those mistakes, and that his decision to plead
9   guilty was not an informed decision because he was not aware of this additional
    evidence. Smith did not, however, describe the substance of the evidence he had
10  recently reviewed. . . .

11  The superior court judge who had accepted Smith's guilty plea heard the motion to
    withdraw the plea. . . .
12

13  Smith testified that despite his requests, his original counsel failed to provide him
    with all of the "discovery" before he entered his guilty plea. Without describing the
    specific content of this evidence, he stated that after he pleaded guilty, his
14  investigator brought him some "discovery" he had not seen before, including the
    bank surveillance video, some photographs of the car search, the location the car
15  had crashed, and some fingerprint testing. He asserted that this evidence
    demonstrated that the identity of the robber was at issue and that he would not have
16  pleaded guilty if he had seen this evidence earlier. . . .

17  After the hearing, the superior court . . . commented . . .

18          The weight of your question, of course, is the question of whether or not
            there is a basis, based upon this information, to withdraw the guilty plea.
19          And I'm not satisfied that there is. I'm satisfied that the evidence in this
            case, circumstantial and direct, is substantial insofar as it relates to this
20          issue of identity. . . . I'm not satisfied there's a basis to allow the
            withdrawal of the guilty plea. Accordingly, I'm denying that . . . .
21

22

23  ────────────────
[3] Smith stated that among four eyewitnesses there were "3 different descriptions of the perp[e]trator." But
24  he did not state what these differences were. (Footnote in original).

The superior court then sentenced Smith. Smith appeals his conviction and the denial of his motion to withdraw his guilty plea.

*State v. Smith*, No. 47488-3-II, 2016 WL 7378823 (Wash. Ct. App. Dec. 20, 2016) (internal citations omitted); Dkt. 11-1, pp. 32-39.

## II.    Procedural Background

### A.  Direct appeal

Petitioner challenged his conviction on direct appeal with the Washington Court of Appeals. *Id.* Petitioner argued two grounds on direct appeal: (1) his guilty plea was not knowing, voluntary, and intelligent; and (2) defense counsel provided ineffective assistance of counsel. *Id.* at pp. 51-73. The Washington Court of Appeals affirmed Petitioner's conviction. *State v. Smith*, No. 47488-3-II, 2016 WL 7378823 (Wash. Ct. App. Dec. 20, 2016); *Id.* at pp. 32-49.

Petitioner then filed a Petition for Review with the Washington Supreme Court. *Id.* at pp. 96-119. In his Petition for Review, Petitioner argued (1) the Washington Court of Appeals made a ruling based on an incomplete record, and (2) his guilty plea was the result of ineffective assistance of counsel. *Id.* at pp. 96-100. The Washington Supreme Court denied the Petition for Review on March 29, 2017. *Id.* at p. 121. The Washington Court of Appeals issued its mandate on April 21, 2017. *Id.* at p. 123.

### B.  Personal Restraint Petitions

Petitioner filed multiple Motions for Relief from Judgment under CrR 7.8 as well as personal restraint petitions ("PRPs").

Petitioner filed his first Motion for Relief from Judgment on August 4, 2016. *Id.* at p. 129. The Pierce County Superior Court transferred Petitioner's Motion to the Washington Court of Appeals to be treated as a PRP. *Id.* at pp. 126-93. The Court of Appeals stayed the PRP pending resolution of Petitioner's direct appeal. Dkt. 11-2, p. 18.

Petitioner filed his second Motion for Relief from Judgment on October 27, 2016. *Id.* pp. 24-36 The Pierce County Superior Court transferred the Motion to the Washington Court of Appeals to be treated as a PRP. *Id.* at pp. 20-125. The Court of Appeals then consolidated the cause with Petitioner's first PRP in *In re Smith*, Case No. 49458-2-II. *Id.* at p. 127.

On June 19, 2017, Petitioner filed a PRP in the Washington Supreme Court, which transferred the PRP to the Washington Court of Appeals. Dkt. 11-3, pp. 2-90; Dkt. 11-4, pp. 1-41. The Court of Appeals then consolidated the PRP with Petitioner's previous PRPs into Case No. 49458-2-II. Dkt. 11-6, p. 57.

On April 27, 2017, Petitioner filed a third Motion for Relief from Judgment, which the Pierce County Superior Court transferred to the Washington Court of Appeals. *Id.* at pp. 69-188; Dkt. 11-7, p. 2.

In his PRPs, Petitioner argued (1) the charging information was constitutionally and legally insufficient because the State did not prove the identity of the robber; (2) his Motion for Relief from Judgment was timely, (3) the State did not meet every essential element of robbery, (4) the court lacked jurisdiction, and (5) the court lacked lawful authority to enter a judgment and sentence. Dkt. 11-1, p. 125; Dkt. 11-2, pp. 24-36. Petitioner also argued four errors created violations of due process and a lack of jurisdiction:

> 1) No valid probable cause affidavit exists. 2) The prosecutor signed the probable cause affidavit as a fact witness, voiding the complaint. 3) The probable cause affidavit constituted double hearsay, voiding the proceedings. 4) The [A]ttorney General presented fraud before congress by asking for money to imprison petitioner when the district attorney knew he was innocent.

Dkt. 11-3, p. 5 (numbering added).

1    On April 26, 2017, the Court of Appeals lifted the stay in Case No. 49458-2-II. Dkt. 11-7,

2    p. 4. On October 31, 2017, the Court of Appeals dismissed all four of Petitioner's PRPs. *Id.* at

3    pp. 6-8.

4    Petitioner filed a Motion for Discretionary Review in the Washington Supreme Court

5    regarding all four PRPs. *Id.* at pp. 10-16. Petitioner raised the following grounds for review: (1)

6    his PRPs were not procedurally barred; (2) the court must construe his pro se pleadings liberally;

7    (3) the use of double hearsay rendered the declaration of probable cause invalid, which violated

8    his due process rights and voided the judgment; (4) the prosecutor's signing of the affidavit of

9    probable cause was illegal; and (5) no probable cause hearing was held, which violated due

10   process and voided the judgment. *Id.*

11   The Washington Supreme Court notified Petitioner that his third Motion for Relief from

12   Judgment had not been consolidated with his prior PRPs and therefore required a separate

13   Motion for Discretionary Review. *Id.* at pp. 32-33. The Washington Supreme Court granted

14   Petitioner an extension of time to file a Motion for Discretionary Review of his remaining PRP.

15   *Id.* at pp. 54-55. Petitioner failed to do so, and on March 2, 2018, the Washington Supreme Court

16   dismissed Petitioner's remaining PRP as abandoned. *Id.* at p. 57.

17   On April 26, 2018, the Washington Supreme Court issued a Ruling Denying Review of

18   Petitioner's PRPs. *Id.* at pp. 35-37. Petitioner filed a Motion to Modify the Ruling, which was

19   denied. *Id.* at pp. 39-50. The Washington Court of Appeals issued a Certificate of Finality on

20   August 20, 2018. *Id*. at p. 52.

21   On September 6, 2018, Petitioner filed his Petition with this Court, raising four grounds:

22   (1) ineffective assistance of trial counsel; (2) "the charging information was constitutionally and

23   legally deficient" because it failed to "include all statutory and non-statutory elements of charged

24

1    crime" and the prosecution did not meet its burden of proof; (3) violations of due process and

2    lack of jurisdiction; and (4) "the judge does not have all credentials to issue a judgment." Dkt 4,

3    pp. 5-10. Petitioner filed a Supplement to his Petition on October 26, 2018. Dkt. 8. Respondent

4    filed a Response on December 10, 2018. Dkt. 10. Petitioner filed a Reply on January 3, 2019.

5    Dkt. 12.

6                                    **EVIDENTIARY HEARING**

7           The decision to hold an evidentiary hearing is committed to the Court's discretion.

8    *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

9    hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

10   entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

11   available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

12   state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the

13   allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It

14   follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

15   relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. at

16   1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because

17   Petitioner's claims may be resolved on the existing state court record.

18                                        **DISCUSSION**

19   **I.    Unexhausted Claims**

20          "[A] state prisoner must normally exhaust available state judicial remedies before a

21   federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275

22   (1971). A petitioner's claims will be considered exhausted only after "the state courts [have been

23   afforded] a meaningful opportunity to consider allegations of legal error without interference

24

REPORT AND RECOMMENDATION - 8

from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

In this case, Petitioner did not exhaust his arguments that "the charging information was constitutionally and legally deficient" because it failed to "include all statutory and non-statutory elements of charged crime" and the prosecution did not meet its burden of proof (Ground Two) and that "the judge does not have all credentials to issue a judgment" (Ground Four). *See* Dkt 4, pp. 5-10.

Petitioner raised Ground Two with the Washington Court of Appeals but not with the Washington Supreme Court. *See* Dkt. 11-7, pp. 6-16. Because Petitioner did not present Ground

1  Two to the Washington Supreme Court in his Motion for Discretionary Review, it is

2  unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (petitioner must present issues to the

3  state supreme court before seeking federal habeas relief). Petitioner concedes he did not raise

4  Ground Four to either the Washington Court of Appeals or the Washington Supreme Court. *See*

5  Dkt. 4, p. 10. Thus, this claim is also unexhausted.

6      Because Petitioner did not exhaust Ground Two and Ground Four, the Court recommends

7  these grounds be denied.

8      **II.     Procedural default**

9      Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

10  290 F.3d 1223, 1230 (9th Cir. 2002). The exhaustion doctrine applies when the state court has

11  not been presented with an opportunity to consider a petitioner's claims and the opportunity may

12  still be available to the petitioner under state law. 28 U.S.C. § 2254(c). In contrast, the procedural

13  default rule bars consideration of a federal claim when it is clear the state court has been

14  presented with the federal claim but declined to reach the issue for procedural reasons or it is

15  clear the state court would hold the claim procedurally barred. *Franklin*, 290 F.3d at 1230-31

16  (citations omitted). If a state procedural rule would now preclude the petitioner from raising his

17  claim at the state level, the claim is considered "procedurally defaulted" and the federal courts

18  are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-

19  32 (1991); *O'Sullivan*, 526 U.S. at 845.

20      Petitioner failed to exhaust Ground Two and Ground Four. *Supra* Section I. These claims

21  are also procedurally defaulted because if Petitioner attempted to present these claims in a new

22  PRP, the state court would find the claim barred by Washington law. Washington imposes a one-

23  year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090.

24

The Washington Court of Appeals issued a mandate finalizing Petitioner's state appeal on April 21, 2017. Dkt. 11-1, p. 123. The time to file a petition or motion for post-conviction relief expired on April 21, 2018, one year from the issuance of the mandate. *See* RCW § 10.73.090(1), (2)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a new PRP with Ground Two and Ground Four. *See id.* at (1).

Petitioner would be precluded from raising these grounds in the state court and therefore Ground Two and Ground Four are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim."). As Petitioner's unexhausted claims are procedurally defaulted, this Court is barred from reviewing them on the merits absent a showing of "cause and prejudice" or actual innocence.

The default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750).

To satisfy the "cause" prong, the petitioner must show "some objective factor external to the defense" prevented him from complying with the state's procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." *Id.* at 493-94 (internal quotes omitted).

1    Once the petitioner establishes cause, he must show "'actual prejudice' resulting from the

2    errors of which he complains." *Allen v. Ornoski*, 435 F.3d 946, 956 (9th Cir. 2006) (quoting

3    *McCleskey*, 499 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982))). Such

4    prejudice exists if the alleged errors worked to the petitioner's "*actual* and substantial

5    disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S.

6    at 170 (emphasis in original).

7    In the alternative, the petitioner can show he has suffered a fundamental miscarriage of

8    justice to overcome the procedural default. In order to demonstrate he suffered a fundamental

9    miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner

10    must show "it is more likely than not that no reasonable juror would have found petitioner guilty

11    beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513

12    U.S. 298, 327 (1995)); *Murray*, 477 U.S. at 495-96 (in an extraordinary case, where a

13    constitutional violation has probably resulted in the conviction of one who is actually innocent,

14    federal habeas court may grant the petition even absent the showing of cause).

15    Here, Petitioner fails to show some objective factor external to his defense prevented him

16    from complying with the State's procedural bar rule. Petitioner does not state any reason why he

17    was unable to comply with the rule as to Ground Two. Thus, he has not shown cause as to his

18    default or prejudice resulting from the errors he alleged. Additionally, Petitioner has not shown

19    he has suffered a fundamental miscarriage of justice because he has not argued that "it is more

20    likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

21    doubt." *See House*, 547 U.S. at 537. Thus, no exception to the procedural bar applies to Ground

22    Two.

23

24

REPORT AND RECOMMENDATION - 12

As to Ground Four, Petitioner stated he "was concerned with the way the Pierce County Superior Court was 'automatically' transferring my motions to another court w/out reviewing or hearing issues concerning my conviction, regardless [of] if it was jurisdictional issues." Dkt. 4, p. 11. Petitioner stated he believed he would "be better served bringing this issue to the federal court for resolution." *Id.*

Petitioner's concern does not constitute cause for his procedural default. The Pierce County Superior Court did not err in transferring Petitioner's motions to the Washington Court of Appeals because they were properly treated as PRPs. *See* CrR 7.8 ("The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing."). Thus, the superior court's transfer of Petitioner's motions was not a valid reason for Petitioner to not comply with the state's procedural rules. Additionally, Petitioner has not shown he has suffered a fundamental miscarriage of justice because he has failed to show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *See House*, 547 U.S. at 537. Thus, no exception to the procedural bar applies to Ground Four.

Petitioner failed to show cause to excuse his procedural default, and therefore the Court is barred from reviewing Ground Two and Ground Four on the merits. Accordingly, the undersigned finds Petitioner is not entitled to relief as to these grounds and recommends they be denied.

1    **III.    Review of Claims on the Merits**

2          Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

3    basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

4    decision that was contrary to, or involved an unreasonable application of, clearly established

5    federal law, as determined by the Supreme Court of the United States." In interpreting this

6    portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

7    clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

8    opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

9    "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

10   result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

11         Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

12   because that court concludes in its independent judgment that the relevant state-court decision

13   applied clearly established federal law erroneously or incorrectly. Rather, that application must

14   also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

15   unreasonable application of Supreme Court precedent occurs "if the state court identifies the

16   correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

17   of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court

18   decision involves an unreasonable application of Supreme Court precedent "'if the state court

19   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

20   where it should not apply or unreasonably refuses to extend that principle to a new context where

21   it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

22   U.S. at 407).

23

24

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

**A. Whether Petitioner's trial counsel provided ineffective assistance (Ground One)**

Petitioner argues his trial counsel provided ineffective assistance of counsel by (1) failing to provide discovery prior to Petitioner's guilty plea; (2) advising Petitioner to plead guilty when the State could not prove identity; (3) advising and assisting Petitioner in writing a statement admitting guilt after the court stated that the facts were insufficient; and (4) failing to move for a dismissal of the charges. Dkt. 4, p. 5.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

1    Under the prejudice prong, a petitioner must establish there is a reasonable probability the

2 results would have been different but for counsel's deficient performance. *Kimmelman v.*

3 *Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a

4 probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

5    When arguing ineffective assistance of counsel regarding a guilty plea, "the defendant

6 must show that there is a reasonable probability that, but for counsel's errors, he would not have

7 pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59

8 (1985); *see also Langford v. Day,* 110 F.3d 1380, 1388 (9th Cir. 1996). This assessment "will

9 depend in large part on a prediction whether the evidence likely would have changed the

10 outcome of a trial." *Hill*, 474 U.S. at 59.

11    In finding Petitioner's trial counsel was not ineffective, the Washington Court of Appeals

12 stated:

13    Smith asserts that his original defense counsel did not advise him that the State
would have difficulty proving the robber's identity. Although the record shows
14    Smith's original counsel and the investigator met with Smith to discuss the case,
the record does not contain any information about what Smith and his counsel
15    discussed. Thus, Smith does not establish that counsel failed to properly advise him.
Accordingly, we hold that the superior court did not abuse its discretion when it
16    denied Smith's CrR 2.3(f) motion based on Smith's claim of ineffective assistance
of counsel.

17

18    Furthermore, even if we assume that defense counsel did not inform Smith about
the additional evidence Smith reviewed after entering his plea, without knowing
19    the content of this evidence, we cannot evaluate whether this additional information
would have reasonably influenced Smith's decision regarding his plea. For
20    instance, this evidence may have been accurately characterized in the statement of
probable cause, which suggests that the State could have identified Smith by
eyewitness identification of his clothing.

21

22 *State v. Smith*, 2016 WL 7378823 (Wash. Ct. App. Dec. 20, 2016) (internal citations omitted);

23 Dkt. 11-1, Exhibit 3, p. 44.

24

1    During Petitioner's change of plea hearing, he stated he did not have any questions about

2  the guilty plea and that he entered the plea because he believed he was guilty of the offense. Dkt.

3  11-7, pp. 72-73. In the hearing on Petitioner's motion to withdraw his guilty plea, Petitioner

4  testified that after he pleaded guilty, he saw for the first time a surveillance video from inside the

5  bank at the time of the robbery, photographs of the officers' search of the car and from the scene

6  of the crash, and results of fingerprint testing. Dkt. 11-2, pp. 76-78. Petitioner stated he would

7  not have pleaded guilty if he had seen this discovery before his plea. *Id.*

8    It is not necessary for the Court to determine whether counsel's advice regarding

9  Petitioner's guilty plea or failure to move to dismiss all charges constituted ineffective assistance

10  of counsel, because Petitioner has not satisfied *Strickland*'s prejudice prong. Petitioner argues the

11  discovery he saw after his plea made him realize the State could not have proven the identity of

12  the robber. *Id*. However, he did not state how the discovery he received contradicted the State's

13  eyewitness evidence, which suggested Petitioner was the robber. *See* Dkt. 11-1, p. 44. For

14  example, Petitioner does not explain what part of the surveillance video or photos shows that the

15  robber was someone other than Petitioner or was wearing clothing that was inconsistent with

16  what the eyewitnesses described. Additionally, Petitioner does not state how the surveillance or

17  photo evidence would have changed his mind about the guilty plea given that a victim identified

18  Petitioner as the robber when police brought the victims to the scene of the car crash. *See id.* at p.

19  33.

20    Petitioner also does not state why the fingerprint testing would have changed his mind

21  about pleading guilty. The Court may not guess as to whether the fingerprint testing showed

22  someone else's fingerprints, was merely inconclusive, or was helpful to Petitioner's defense in

23  an entirely different manner. Absent these allegations, the Court cannot conclude that the

24

1    discovery Petitioner received likely would have changed the outcome of a trial to the point where

2    Petitioner would not have agreed to a guilty plea. *See Hill*, 474 U.S. at 59. Thus, Petitioner has

3    not shown prejudice from his counsel's failure to show him the relevant discovery before his

4    plea. As a result, Petitioner has not shown the state court's decision was contrary to, or involved

5    an unreasonable application of, clearly established federal law. Accordingly, the Court

6    recommends Ground One be denied.

7    **B. Whether Petitioner's due process rights were violated and the state court lacked**
     **jurisdiction (Ground Three)**

8
9    Petitioner argues due process and jurisdictional violations occurred because: (1) no valid

10   probable cause affidavit exists; (2) the prosecutor signed the probable cause affidavit as a fact

11   witness, voiding the complaint; (3) the probable cause affidavit constituted double hearsay,

12   voiding the proceedings; and (4) "the attorney general presented fraud before Congress by asking

13   for money to imprison Petitioner when the district attorney knew he was innocent." Dkt. 4, p. 8.

14   Petitioner also argues that no probable cause hearing was held, which invalidated the

15   proceedings. Dkt. 8, p. 18; Dkt. 12, p. 5.

16       *1. Probable cause affidavit*

17   Petitioner's first three reasons essentially argue the probable cause affidavit is invalid

18   because the prosecutor signed it as a witness, which meant the affidavit relied on double hearsay.

19   Dkt. 4, p. 8.

20   In its Ruling Denying Review, the Washington Supreme Court stated Petitioner "cites no

21   authority for his proposition that [the prosecutor's signing of the affidavit] violates his due

22   process rights or undermines the trial court's jurisdiction." Dkt. 11-7, p. 36.

23   Petitioner has not cited and the Court has not found any U.S. Supreme Court case law

24   supporting Petitioner's argument that a prosecutor's signing of a probable cause affidavit violates

1  a criminal defendant's due process rights or deprives the court of jurisdiction. The Supreme

2  Court also has not addressed whether the inclusion of double hearsay voids a probable cause

3  affidavit. To the contrary, the Supreme Court has stated that "probable cause may be founded

4  upon hearsay and upon information received from informants, as well as upon information

5  within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v.*

6  *Delaware*, 438 U.S. 154, 164-65 (1978).

7          Petitioner cites *Franks* and *United States v. Salvucci*, 448 U.S. 83 (1980), as examples of

8  the Supreme Court's rulings on double hearsay. Dkt. 8, p. 19. However, neither of these cases

9  created clearly established law regarding double hearsay within a probable cause statement.

10          In *Franks*, the U.S. Supreme Court cited a case in which double hearsay in an affidavit

11  contained inaccuracies. 438 U.S. at 163 n.6 (citing *Rugendorf v. United States*, 376 U.S. 528, 533

12  n.4 (1964)). But *Franks* stated merely that in *Rugendorf*, the Court "took as its premise that

13  police could not insulate one officer's deliberate misstatement merely by relaying it through an

14  officer-affiant personally ignorant of its falsity." *Franks*, 438 U.S. at 164. But *Franks* itself did

15  not address the issue of double hearsay in an affidavit. Additionally, *Rugendorf* applied to

16  situations where an officer deliberately misstated facts, but not to double hearsay in general.

17  *Rugendorf*, 376 U.S. at 533 n.4. Thus, neither *Franks* nor *Rugendorf* clearly established a rule

18  that a probable cause statement may not contain double hearsay. Additionally, Petitioner has not

19  alleged that the probable cause affidavit in this case contained deliberate misstatements, and

20  thus, *Rugendorf* does not apply.

21          Similarly, *Salvucci* dealt only indirectly with the issue of double hearsay. In that case, the

22  U.S. Supreme Court stated in a footnote that the district court had held a probable cause affidavit

23  "was deficient because the affiant relied on double hearsay, and failed to specify the dates on

24

1    which information included in the affidavit had been obtained." *Salvucci*, 448 U.S. at 85 n.1. The

2    holding of *Salvucci*, however, dealt with standing, not sufficiency of the probable cause affidavit.

3    *Id.* at 95. Thus, *Salvucci* did not create clearly established law regarding the use of double

4    hearsay in a probable cause affidavit. Petitioner has not presented and the Court is not aware of

5    any clearly established Supreme Court precedent stating that a probable cause affidavit that relies

6    on double hearsay is void. Thus, the Court finds the state court did not act contrary to clearly

7    established Supreme Court law when it allowed the probable cause affidavit to be signed by the

8    prosecutor. As a result, Petitioner has not shown the state court's decision was contrary to, or

9    involved an unreasonable application of, clearly established federal law.

10           *2. Fraud*

11           Petitioner also argued "the attorney general presented fraud before Congress by asking

12   for money to imprison Petitioner when the district attorney knew he was innocent." Dkt. 4, p. 8.

13   Petitioner raised this issue with the Washington Court of Appeals but not with the Washington

14   Supreme Court. *See* Dkt. 11-7, pp. 6-16. Because Petitioner failed to raise this argument with the

15   state supreme court, it is unexhausted. *See supra* Section I. Additionally, the claim is

16   procedurally barred because Petitioner may not now raise the argument in a new PRP as the state

17   time limit for PRPs has run and no exception to the procedural bar applies. *See supra* Section II.

18   For these reasons, the Court declines to address this argument on the merits.

19           *3. Probable cause hearing*

20           Petitioner also argues that no probable cause hearing was held, which invalidated the

21   proceedings. Dkt. 12, p. 5.

22

23

24

REPORT AND RECOMMENDATION - 20

1   In its Ruling Denying Review, the Washington Supreme Court stated Petitioner "fails to

2 provide any factual basis for his claim that he did not receive a probable cause hearing." Dkt. 11-

3 7, p. 36.

4   Washington state law requires "a judicial determination of probable cause no later than

5 48 hours following the person's arrest, unless probable cause has been determined prior to such

6 arrest." CrR 3.2.1(a). This determination is made at the defendant's preliminary appearance. CrR

7 3.2.1(e).

8   Petitioner cites to the docket of his criminal case as proof that no probable cause hearing

9 was held. *See* Dkt. 11-7, p. 43. However, the docket that Petitioner attached shows filings made

10 within 48 hours of Petitioner's arrest: an affidavit/determination of probable cause, an order for

11 hearing, and an order on preliminary appearance. *Id.* at p. 47. The Court cannot determine from

12 these docket entries whether the court made a probable cause determination at the preliminary

13 appearance. However, given that the docket appears to show a preliminary appearance was held,

14 Petitioner has not shown that a "probable cause hearing" was not held.

15   Even if a probable cause hearing was not held, the Court notes that Petitioner's argument

16 is precluded by his guilty plea. Where a criminal defendant enters a valid guilty plea, he "may

17 not thereafter raise independent claims relating to the deprivation of constitutional rights that

18 occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973);

19 *see also United States v. Broce*, 488 U.S. 563, 569 (1989) (stating that if guilty plea was valid,

20 "then the conviction and the plea, as a general rule, foreclose [a] collateral attack"). A guilty plea

21 thus bars claims based on a lack of probable cause or a hearing to establish probable cause. *See*

22 *Bostick v. Craven*, 429 F.2d 23, 24 (9th Cir. 1970) ("Having concluded that it was voluntarily

23 and intelligently given, [defendant's] guilty plea waived any right to challenge the preliminary

24

1    hearing."); *Edwards v. United States*, No. C05-504JCC, 2005 WL 2464352, at *2 (W.D. Wash.

2    Oct. 5, 2005) (stating that because petitioner's challenge that was based on a lack of probable

3    cause "preceded the entry and acceptance of his plea, his claims are foreclosed by his knowing

4    and voluntary guilty plea").

5        In this case, the Court has found no basis for federal relief for Petitioner to withdraw his

6    guilty plea. *See supra* Section III.A. Thus, his guilty plea bars him from bringing a collateral

7    attack on the grounds preceding his plea, including that he did not receive a probable cause

8    hearing. Accordingly, the Washington Supreme Court did not issue a decision contrary to clearly

9    established federal law in concluding this claim lacks a factual basis.

10       Because Petitioner has not shown the state court decision regarding due process and

11   jurisdiction was contrary to, or an unreasonable application of, clearly established Supreme

12   Court law, the Court recommends Ground Three be denied.

13                              **CERTIFICATE OF APPEALABILITY**

14       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

15   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

16   from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue

17   . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right."

18   28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason

19   could disagree with the district court's resolution of his constitutional claims or that jurists could

20   conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

21   *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

22

23

24

1    No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

2    would conclude the issues presented in the Petition should proceed further. Therefore, the Court

3    concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

4                                        **CONCLUSION**

5    The Court recommends the Petition be denied. No evidentiary hearing is necessary, and a

6    certificate of appealability should be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

7    P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written

8    objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

9    objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

10   Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the

11   matter for consideration on February 15, 2019, as noted in the caption.

12   Dated this 29th day of January, 2019.

13

14                                        David W. Christel
                                          United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24